UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASPREET S., <br><br> Petitioner, <br><br> v. <br><br> WARDEN of the MESA VERDE DETENTION CENTER, et al., <br><br> Respondents. | No. 1:25-cv-01940-TLN-EFB <br><br><br> **ORDER** |

This matter is before the Court on Petitioner Jaspreet S.'s[1] ("Petitioner") Ex-Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 4.) For the reasons set forth below, Petitioner's Motion is GRANTED.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a citizen and national of India who has lived in the United States since late 2021. (ECF No. 1 at 7.) Petitioner has no criminal record, holds a valid commercial driver's

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1  license from the State of California and has been supporting himself as a truck driver.  (ECF No.
2  1 at 7.)  For the past two years, Petitioner has been living in Oakley, California where he rents a
3  home and pays income taxes.  (*Id.*)

4  Petitioner entered the United States in September 2021.  (ECF No. 1-1.)  Petitioner was
5  apprehended when he crossed the border near Calexico, California.  (*Id.*)  He was issued a Form
6  I-860 – a Notice and Order of Expedited Removal – on September 27, 2021.  (*Id.*)  Petitioner
7  indicated a fear of political persecution and was detained pending a credible fear interview.  (ECF
8  No. 1 at 6.)  Approximately three weeks later, without having received his credible fear interview,
9  U.S. Immigration and Customs Enforcement ("ICE") released petitioner on an order of
10 supervision.  (ECF No. 1-2.)  Approximately four years later, Petitioner received a notice that his
11 credible fear interview had been scheduled in San Francisco on September 2, 2025.  (ECF No. 1
12 at 7.)  Petitioner appeared as ordered for his interview and was detained by ICE.  (*Id.*)  Petitioner
13 was subsequently issued a Notice to Appear ("Notice") dated September 14, 2025.  (*Id.*; ECF No.
14 1-4.)  The Notice stated he was: (1) not a citizen or national of the United States; (2) was a native
15 of India; (3) entered the United States at an unknown location in September 2021; (3) did not
16 posses any valid entry documents; and (5) was not admitted or paroled after inspection by an
17 immigration officer.  (ECF No. 1-4 at 1.)  The Notice also indicated an asylum officer had
18 determined Petitioner had a credible fear of persecution or torture.  (*Id.*)

19 Petitioner has been detained without a bond hearing for more than three months.  (ECF
20 No. 1 at 7.)  Petitioner requested bond with an immigration judge on October 23, 2025, but was
21 denied based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A).  (*Id.*)  Because
22 an asylum officer made a credible fear determination for Petitioner, on December 3, 2025,
23 Petitioner filed an asylum application which remains pending.  (*Id.*)  Petitioner's next
24 immigration hearing is set for April 6, 2026.  (ECF No. 4 at 9.)

25 On December 19, 2025, Petitioner filed a writ of habeas corpus.  (ECF No. 1.)  Petitioner
26 subsequently filed a TRO challenging the constitutionality of his detention and seeking
27 immediate release.  (ECF No. 4.)
28 ///

II.  **STANDARD OF LAW**

For a TRO, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

III.  **ANALYSIS**[2]

A.  <u>Likelihood of Success on the Merits</u>

Petitioner has established a likelihood of success on his due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights

---

[2] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner has filed the requisite affidavits and notified Respondents via email on December 22, 2025 that he would be filing the motion. (ECF No. 4 at 12.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

1  extend to immigration proceedings. *Id.* at 693–94.

2  Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). ). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom when ICE elected to release him under an order of supervision in 2021. Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner states he has complied with all the conditions of his release, he has no criminal record, and upon his detention, ICE proffered no reason for the revocation of his release under his order of supervision. (ECF No. 1 at 7.) Moreover, for

4

1    approximately four years, Petitioner built a life in the United States. (ECF No. 4 at 9.) He paid
2    taxes, worked as a truck driver, and rented a home in Oakley, California. (ECF No. 1 at 7.) As
3    this Court has found previously, along with many other courts in this district when confronted
4    with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe*
5    *v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in
6    allowing petitioner to remain in the community for over five years strengthened petitioner's
7    liberty interest).

8          As to the second step — what procedures or process is due — the Court considers three
9    factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an
10   erroneous deprivation of such interest through the procedures used, and the probable value, if any,
11   of additional or substitute procedural safeguards;" and (3) "the Government's interest, including
12   the function involved and the fiscal and administrative burdens that the additional or substitute
13   procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set
14   forth below, the Court finds Petitioner has established his due process rights were likely violated.

15         First, Petitioner has a substantial private interest in remaining free from detention. As
16   discussed above, Petitioner was out of custody for approximately four years, had built a life in
17   California, and has complied with his release conditions. Despite that, Petitioner has now been
18   detained for over three months without being afforded a bond hearing. Accordingly, this factor
19   weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See*
20   *Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal.
21   Nov. 20, 2025) (finding similarly).

22         Second, the risk of erroneous deprivation is considerable given Petitioner has not received
23   any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive
24   in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the
25   community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted).
26   Petitioner represents he has no criminal history and has complied with the conditions of his
27   release. (ECF No. 1 at 6–7.) Based on this record, the Court finds there is a serious likelihood
28   Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural

safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Petitioner claims that the Respondents' own regulations require notice and a pre-deprivation hearing, which they did not provide. (ECF No. 4 at 9–10.) Indeed, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum case than to continue to detain him. Additionally, Respondents have not supplied Petitioner with any legitimate interest for detaining him. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."). *Hernandez*, 872 F.3d at 994. Petitioner has complied with all the conditions of his order of supervision and is not a flight risk; he has no criminal record; and a neutral decisionmaker has not made an alternate determination, because Respondents have not provided him a bond hearing, despite his request.

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process: a hearing to determine whether detention is warranted. Accordingly, with respect to his due process claim, Petitioner has shown he is likely to succeed on the merits.

B.      Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Petitioner has been detained for over three months without a bond hearing and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

///

C. <u>Balance of Equities and Public Interest</u>

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

In sum, these last two factors weigh in Petitioner's favor. Therefore, the Court GRANTS Petitioner's Motion for a TRO. (ECF No. 4.)

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order (ECF No. 4) is GRANTED.
2. Respondents must IMMEDIATELY RELEASE Petitioner Jaspreet S. from custody under the same conditions as he was released previously, prior to his September 2, 2025 detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have his counsel present.
4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a

|   |   |
|---|---|
| 1 | preliminary injunction continuing this order.  Respondents shall file responsive papers by |
| 2 | **Tuesday, December 30, 2025**.  Petitioner may file a reply, if any, by **Monday, January** |
| 3 | **5, 2026**.  **The parties shall indicate in their briefing whether they waive hearing**.  Fed. |
| 4 | R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by |
| 5 | the parties if they agree to a less demanding briefing schedule. |

5. Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents at usacae.ecf2241-imm@usdoj.gov.  Petitioner shall file proof of such service no later than **9 a.m. on December 24, 2025.**

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

IT IS SO ORDERED.

Date: December 23, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE