UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASPREET S., <br><br> Petitioner, <br><br> v. <br><br> WARDEN of the MESA VERDE DETENTION CENTER, et al., <br><br> Respondents. | No. 1:25-cv-01940-TLN-EFB <br><br> **ORDER** |

On December 23, 2025, the Court granted Petitioner Jaspreet S.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why this Court should not convert the TRO into a preliminary injunction. (ECF No. 8.) On December 30, 2025, Respondents filed a response. (ECF No. 11.) For the reasons set forth below, the Court issues a preliminary injunction.

**I.   FACTUAL AND PROCEDURAL BACKGROUND[1]**

Petitioner is a citizen and national of India who has lived in the United States since late 2021. (ECF No. 1 at 7.) Petitioner has no criminal record, holds a valid commercial driver's

---

[1] Respondents do not dispute the facts provided by Petitioner and set forth in this Court's prior order. (*See generally* ECF No. 11.) As such, these facts are reiterated almost verbatim here for clarity.

1

1  license from the State of California and has been supporting himself as a truck driver.  (ECF No.
2  1 at 7.)  For the past two years, Petitioner has been living in Oakley, California where he rents a
3  home and pays income taxes.  (*Id.*)

4  Petitioner entered the United States in September 2021.  (ECF No. 1-1.)  Petitioner was
5  apprehended when he crossed the border near Calexico, California.  (*Id.*)  He was issued a Form
6  I-860 – a Notice and Order of Expedited Removal – on September 27, 2021.  (*Id.*)  Petitioner
7  indicated a fear of political persecution and was detained pending a credible fear interview.  (ECF
8  No. 1 at 6.)  Approximately three weeks later, without having received his credible fear interview,
9  U.S. Immigration and Customs Enforcement ("ICE") released petitioner on an order of
10 supervision.  (ECF No. 1-2.)  Approximately four years later, Petitioner received a notice that his
11 credible fear interview had been scheduled in San Francisco on September 2, 2025.  (ECF No. 1
12 at 7.)  Petitioner appeared as ordered for his interview and was detained by ICE.  (*Id.*)  Petitioner
13 was subsequently issued a Notice to Appear ("Notice") dated September 14, 2025.  (*Id.*; ECF No.
14 1-4.)  The Notice stated he was: (1) not a citizen or national of the United States; (2) was a native
15 of India; (3) entered the United States at an unknown location in September 2021; (3) did not
16 posses any valid entry documents; and (5) was not admitted or paroled after inspection by an
17 immigration officer.  (ECF No. 1-4 at 1.)  The Notice also indicated an asylum officer had
18 determined Petitioner had a credible fear of persecution or torture.  (*Id.*)

19 Petitioner requested bond with an immigration judge on October 23, 2025, but was denied
20 based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A).  (ECF No. 1 at 7.)
21 Because an asylum officer made a credible fear determination for Petitioner, on December 3,
22 2025, Petitioner filed an asylum application which remains pending.  (*Id.*)  Petitioner's next
23 immigration hearing is set for April 6, 2026.  (ECF No. 4 at 9.)

24 On December 19, 2025, Petitioner filed a writ of habeas corpus.  (ECF No. 1.)  Petitioner
25 subsequently filed a TRO challenging the constitutionality of his detention and seeking
26 immediate release.  (ECF No. 4.)  On December 23, 2025, this Court issued a TRO requiring
27 Petitioner's immediate release and further enjoining and restraining Respondents from re-
28 arresting or re-detaining Petitioner absent compliance with constitutional protections.  (ECF No.

2

8.)  The Court now determines whether the relief contained in the TRO should continue as a preliminary injunction.

## II.    STANDARD OF LAW

For a preliminary injunction, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary injunction.  *Id.* at 1134–35.

## III.    ANALYSIS

This Court has already found that Petitioner established a likelihood of success on each of the *Winter* elements sufficient to warrant relief as set forth in the TRO.  (ECF No. 8.)  Because the standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), the Court incorporates its reasoning from the TRO and need not duplicate its analysis here.

Respondents argue Petitioner is subject to the mandatory detention framework of § 1225(b) and therefore the Court should not convert the TRO into a preliminary injunction preventing Petitioner's detention.  (ECF No. 11 at 7–8.)  Additionally, Respondents contend the *Matthews* factors do not mandate a remedy.  (*Id.* at 8–10.)  Despite these arguments, Respondents

acknowledge courts in this district have granted relief under similar circumstances.[2] (*Id.* at 1.) As described below, this Court finds no reason to deviate from these decisions nor its prior analysis.

First, the Court finds it need not engage with Respondents' statutory interpretation, because even if Respondents were correct, Petitioner is still entitled to constitutionally compliant due process when the Government revokes a conferred liberty interest. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). Due process rights extend to immigration proceedings and certainly to detention. *Id.* at 693–94; *Hernandez v. Session*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to [detain] non-citizens is always constrained by the requirements of due process.").

As this Court held previously and is worth reiterating here, Petitioner gained a liberty interest in his continued freedom when ICE elected to release him under an order of supervision in 2021. (ECF No. 1-2; ECF No. 11 at 2.) Under the Supreme Court's decision in *Morrisey v. Brewer*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. 408 U.S. 471, 482 ("[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'") Petitioner stated he complied with all the conditions of his release, he has no criminal record, and upon his detention, ICE proffered no reason for the revocation of his release under his order of supervision. (ECF No. 1 at 7.) Respondents do not contest any of these facts nor provide any justification for detaining Petitioner. It is clear to this Court, despite Respondents arguments otherwise, that Petitioner established his liberty interest.

Second, Respondents' argument that *Matthews v. Eldridge* does not apply is unavailing. (ECF No. 11 at 8–9 (citing 424 U.S. 319 (1976))); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (Noncitizens "who have once passed through our gates, even

---

[2] Respondents technically state "this Court" has granted relief in similar circumstances but cite to orders issued by another court in this district.

1  illegally, are afforded the full panoply of procedural due process protections, and may be expelled
2  only after proceedings conforming to traditional standards of fairness.") (cleaned up).
3  Respondents provide no authority for this point and acknowledge that neither the Supreme Court
4  nor the Ninth Circuit have in fact foreclosed the use of the *Matthews* factors under these
5  circumstances. (ECF No. 13 at 8–9 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th.
6  Cir. 2022).) Without such binding authority holding otherwise, the Court finds no persuasive
7  reason to alter its prior analysis that under *Matthews*, Petitioner was entitled to, at minimum, the
8  opportunity to be heard and was not provided with that baseline protection. (ECF No. 8).
9        In sum, Respondents did not provide adequate and constitutionally-compliant due process
10 when restraining Petitioner's liberty. To prevent further irreparable harm, the Court issues a
11 preliminary injunction as set forth below.

      **IV.**    **CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Respondents are ENJOINED AND RESTRAINED from imposing additional restrictions on Petitioner's terms of release, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have his counsel present.

3. Within ten (10) days of the date of this Order, the parties shall file a joint status report addressing the parties' plan to proceed with this action. The joint status report should address, at minimum, whether the conditions of Petitioner's release comply with this Court's order, whether parties anticipate any motions practice, or whether parties believe the habeas petition is moot.

IT IS SO ORDERED.

1  Date: January 6, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE